UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,               No. 1:17-CR-44

      v.                              Hon. Robert J. Jonker
                                         Chief U.S. District Judge

CHARLES AGHOGHO EJINYERE,

        Defendant.

_____/

**<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM</u>**

On June 21, 2019, Defendant Charles Aghogho Ejinyere filed a sentencing memorandum in which he objected to two aspects of the Sentencing Guidelines calculation in this case as set out in the presentence report (PSR): (1) the amount of intended loss under U.S.S.G. § 2B1.1, and (2) the lack of a downward adjustment for a mitigating role. The United States submits that the Court should adopt the PSR's scoring.

    1. **Intended Loss**

Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), the presentence report scored an 18-level enhancement for an intended loss of slightly more than $4 million. (R.140: PSR ¶ 62, PageID.748.) Defendant Ejinyere argues that this overstates his role in the offense because he was not aware of all of the tax returns that his co-defendant Oghenevwakpo Igboba filed in this case, and therefore did not "purposely" seek to inflict that pecuniary harm. Ejinyere argues that he filed a smaller proportion of the fraudulent tax returns than Igboba did and expected a high failure rate of claims for refunds. (PageID.765-66.) Ejinyere also argues that he only ever filed

for refunds between $7,000 and $21,167, and that Igboba filed for much larger refunds. (PageID.766-67.)

For fraud offenses, the Sentencing Guidelines call for an increase in the offense level based on the amount of loss. *See* U.S.S.G. § 2B1.1(b)(1). The amount of loss is the greater of actual loss or intended loss. *Id.*, comment. (n.3). "Because of the difficulties often associated with attempting to calculate loss in a fraud case, the district court need only make a reasonable estimate of the loss using a preponderance of the evidence standard." *United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013) (internal quotation omitted); *see also United States v. Howley,* 707 F.3d 575, 583 (6th Cir. 2013) ("The Guidelines require only a reasonable estimate of actual or intended loss within broad ranges.") (internal quotation omitted).

In cases involving conspiracies and other jointly undertaken criminal activity, a sentencing court may consider the conduct of others in determining the offense level. *See* U.S.S.G. § 1B1.3; *United States v. Catchings*, 708 F.3d 710, 720 (6th Cir. 2013) ("In calculating the Guidelines loss under U.S.S.G. § 2B1.1(b)(1), district courts include losses sustained from relevant conduct under U.S.S.G. § 1B1.3"); *see also United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002).

According to Section 1B1.3(a)(1)(B), a specific offense characteristic, e.g., a loss enhancement, should be determined on the basis of the following:

> [I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that criminal activity;

>that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
>…[and]
>
>(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions ….

U.S.S.G. § 1B1.3(a)(1)(B). The Guidelines commentary states that the acts of others must meet all three criteria ("within the scope," "in furtherance," and "reasonably foreseeable") to be considered relevant conduct. *See* § 1B1.3, comment. (n.3(A)). If the acts of others were within the scope of the defendant's agreement to engage in the criminal activity and done in furtherance of that criminal activity, the sentencing court must determine if the conduct of others "was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." *Id.*, (n.3(D)). *See Orlando*, 281 F.3d at 600; *see also United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002); *United States v. Harris*, 636 F. App'x 922, 926 (6th Cir. 2016). The term "harm" in Section 1B1.3(a) includes "monetary loss." *See* § 1B1.3, comment. (n.6).

The Sixth Circuit has affirmed the use of U.S.S.G. § 1B1.3(a) to hold a defendant responsible for the entire loss in a fraud scheme, even if the defendant did not participate in all of the acts resulting in the loss. *See, e.g.*, *United States v. Brown*, 66 F.3d 124, 128-29 (6th Cir. 1995) (district court's finding that entire amount stolen in embezzlement conspiracy was reasonably foreseeable to defendant was not clearly erroneous); *United States v. Hayslett*, 11 F. App'x 460, 462 (6th Cir. 2001) (affirming district court's finding that entire loss in interstate transport of stolen goods scheme was reasonably foreseeable to defendant). Although Ejinyere points to Amendment 792's revision to the commentary clarifying that intended loss is determined under a subjective—rather than objective—standard, nothing in that change affects

3

the requirement that the Court consider relevant conduct in the context of a conspiracy. U.S.S.G. supp. app'x C amend. 792 at 113 (Nov. 1, 2015).

Here, Ejinyere and Igboba exchanged numerous emails and shared tax transcripts, tax filings, and spreadsheets of personally identifiable information (PII), which was found on both Igboba's and Ejinyere's computers and electronic devices. Ejinyere concedes that he "knew that Igboba was filing returns that claimed refunds." (PageID.766.) That access and knowledge made Igboba's conduct reasonably foreseeable to Ejinyere.

Ejinyere argues he filed far fewer of the tax returns than Igboba and purports to have received only a small amount of money ($3,000 to $4,000). The government cannot confirm this information. Nor does it have a basis to dispute it. Submitted claims are prima facie evidence of intended loss, but a "defendant is free to introduce evidence" to overcome that presumption. *United States v. Vysniauskas*, 593 F. App'x 518, 524 (6th Cir. 2015); *see also United States v. Miller*, 316 F.3d 495, 504 (4th Cir. 2003); *United States v. Ravelo*, 370 F.3d 266, 272-73 (2d Cir. 2004).

Even assuming that his proffered information is correct, the ultimately limited profitability of the scheme for Ejinyere due to Igboba's perfidy does not negate intended loss. Likewise his filing of comparatively fewer returns does not mean that Igboba's filings were not reasonably foreseeable to him. And he candidly admitted that he knew Igboba was filing returns. (PageID.766.)

Ejinyere further argues that, while he was aware that Igboba was filing fraudulent tax returns, he was not aware that Igboba was filing claims for large tax refunds. (PageID.767.) However, Ejinyere points to no evidence that the co-conspirators agreed to any limit on the

4

amount of tax refunds requested (either in number or amount). Absent an express limit in the agreement, Ejinyere is liable for his co-defendant's reasonably foreseeable conduct.

Ejinyere appears to be asking the Court to discount the loss amount based on the low success rate of the scheme. (PageID.766-67.) As argued more fully in ECF 109, the guideline requires the inclusion of attempted loss even though a defendant was unlikely to have been successful in obtaining all of the fraudulent gains sought. (PageID.588-92.) *See, e.g., United States v. McBride*, 362 F.3d 360, 374 (6th Cir. 2004); *Vysniauskas*, 593 F. App'x at 525; *United States v. Quinn*, 306 F. App'x 989 (6th Cir. 2009); *United States v. Geevers*, 226 F.3d 186, 188, 193 (3d Cir. 2000); *Miller*, 316 F.3d at 503-05; *United States v. Imo*, 739 F.3d 226, 240 (5th Cir. 2014); *United States v. Isiwele*, 635 F.3d 196, 202-03 (5th Cir. 2011); *United States v. Dinnall*, 313 F. App'x 241, 244-45 (11th Cir. 2009). This Court rejected that argument in Igboba's sentencing.

Because Ejinyere was aware that Igboba was filing additional tax returns, the entire amount of the intended loss (as set out in Government's Exhibit 300) was reasonably foreseeable to him and is properly scored.

### 2. Mitigating Role

Ejinyere next argues that he should receive a mitigating role adjustment. The United States agrees that Igboba was a leader in this conspiracy, and that Ejinyere assisted Igboba in perpetrating the fraud. Indeed, the United States argued for a four-level aggravating role adjustment for Igboba, but the Court declined to apply that enhancement.

Nonetheless, Ejinyere was deeply involved in the scheme and not substantially less culpable than Igboba even though Igboba directed it. Ejinyere and Igboba exchanged a large number of emails containing spreadsheets of other individuals' PII. Ejinyere worked to identify

social security numbers and electronic filing PINs for those individuals, which he sometimes used to file tax returns himself and sometimes transmitted to Igboba. (*See*, *e.g.*, PSR ¶¶ 27-30, 42, PageID.736-37, 739.)[1] At Igboba's trial and in Government's Exhibit 300, evidence was presented demonstrating the exchanges between Igboba and Ejinyere, as they compiled the requisite PII to file false tax returns. In addition, investigators executed a search warrant on electronic devices seized from Ejinyere and found the same types of tax transcripts, tax filings, and spreadsheets of PII that were found on Igboba's computers, and regarding which Igboba and Ejinyere had exchanged emails. (PSR ¶ 42, PageID.739.)

Given Ejinyere's copious work to perpetrate the fraud, including researching and compiling social security numbers and electronic filing PINs, as well as filing false tax returns, the United States opposes a two-level adjustment for mitigating role.

Respectfully Submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: June 25, 2019

/s/ Sally J. Berens
SALLY J. BERENS
CHRISTOPHER M. O'CONNOR
Assistant United States Attorneys
United States Attorney's Office
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

---

[1] The United States agrees that, pursuant to the proffer agreement and subsequent plea agreement, Ejinyere's proffered statements cannot be used against him in connection with his sentencing *except* to the extent that he offers testimony or takes a position materially inconsistent with those prior statements. (PageID.641-42.)